**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CONNOR LAW, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:24-cv-01533-ADA |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| EMS LINQ, LLC, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARILY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Connor Law, individually and on behalf of all others similarly situated, respectfully moves pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[1] preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

## I.    INTRODUCTION

On or about November 12, 2024, Defendant EMS LINQ, LLC ("Defendant" or "LINQ"), announced a Data Security Incident impacting the personally identifying information ( "Personal Information"), including names, addresses, dates of birth, bank account information, and Social Security numbers of numerous individuals. *See* Declaration of Class Counsel ("Decl.") ¶ 2, attached as Exhibit B. As a result of the Data Security Incident, this Action was initiated in connection with Defendant's alleged failure to safeguard the Personal Information it maintained

---

[1]    All capitalized terms herein shall have the same meanings as those defined in Section I of the Settlement Agreement, attached hereto as Exhibit A.

on behalf of the Settlement Class. *Id.* ¶ 3. Defendant denies all liability and wrongdoing. *Id.* ¶ 3; Settlement Agreement ("Settlement Agreement" or "Agreement") § III.

After arm's-length negotiations spanning over six months, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id.* ¶¶ 5–7, 27–30. The Settlement Agreement addresses payments for benefits to Settlement Class Members, Notice and Administrative Expenses, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court.  *Id.* ¶¶ 8–10, 13; Agreement ¶¶ 2.1–2.3, 2.6, 3.2, 7.1–7.3. Additionally, Defendant has agreed to provide a period of credit monitoring for Settlement Class Members who submit valid claims, and has made assurances regarding improvements to the security of its systems housing Personal Information. *Id.* ¶ 10; Agreement ¶ 2.4. The Parties negotiated Plaintiff's Service Award and Plaintiff's Counsel's Attorneys' Fees, Costs, and Expenses separately, and those payments will be addressed in a separate motion. *Id.* ¶¶ 13–15; Agreement ¶¶ 7.1–7.3. Plaintiff believes the Settlement is favorable to the Settlement Class. *Id.* ¶¶ 29, 30, 33, 34.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant is a company that provides human resources and other support services to its clients. Decl. ¶ 2. In order to receive the human resources services that Defendant offers, each client must provide Defendant with sensitive and personal information such as names, dates of birth, Social Security numbers, and financial information for the client's employees. *Id.* On or around November 12, 2024, Defendant began sending notice letters to individuals advising them that their Personal Information had been potentially compromised in the Data Security Incident. *Id.*

On December 13, 2024, Plaintiff filed a Class Action Complaint in the United States District Court of the Western District of Texas, alleging: (1) negligence; (2) breach of third-party

beneficiary contract; (3) breach of implied contract; and (4) negligence *per se*. [DE # 1]. After Plaintiff filed the Class Action Complaint, the Parties met and conferred on several occasions to discuss the merits of the claims, conducted informal discovery, and on May 28, 2025, the Parties reached an agreement in principle on the material terms of a proposed class action settlement. Decl. ¶¶ 4–5. The agreement was reached through arms'-length negotiation and advocacy by counsel on behalf of the Parties, aided by proposed Class Counsel's extensive experience with complex litigation and in particular data breach cases. *Id*. ¶ 5.

On May 29, 2025, the parties filed an Agreed Motion to Advise Court of Settlement and Request a Stay of Defendant's Responsive Pleading Deadline and to Set Deadline to File Motion for Preliminary Approval [DE # 10] informing the Court that the Parties had reached a settlement in principal and proposing to file a Motion for Preliminary Approval of Class Action Settlement. Over the following weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Decl. ¶ 6. The Settlement Agreement was finalized on July 30, 2025. *See* Agreement. It is proposed Class Counsel's opinion that the Agreement presents a favorable result for the Settlement Class. Decl. ¶ 5, 33; Agreement § II.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class has approximately 22,200 members and is defined as follows:

> All persons who were sent written notification that their Personal Information was potentially accessed, viewed, and/or obtained as a result of the Data Security Incident which occurred between September 12, 2023 and May 13, 2024.

Agreement ¶ 1.23; Decl. ¶ 2. The Settlement Class specifically excludes (i) LINQ, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly

request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B.     Settlement Consideration

#### 1.     *Benefits and Cash Payments*

The Settlement addresses payments for benefits to Settlement Class Members, Notice and Administrative Expenses, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court. Agreement ¶¶ 2.1–2.3, 2.6, 3.2, 7.1–7.3. The Settlement Class Members may claim one or more of a variety of awards. Agreement ¶¶ 2.1–2.3.

First, Settlement Class Members may claim Compensation for Ordinary Losses, which includes up to a total of $500.00 per person for unreimbursed losses upon submission of a claim and supporting documentation. *Id.* ¶ 2.1.1(a). Ordinary Losses include documented out-of-pocket expenses incurred as a result of the Data Security Incident such as bank fees, long-distance phone charges, minute-based cell phone charges, data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. *Id.* ¶ 2.1.1(a)(a). Other examples of Ordinary Losses are fees for credit reports, credit monitoring, or another identity theft insurance product purchased between September 12, 2023, and the Claims Deadline. *Id.* ¶ 2.1.1(a)(b).

In addition to compensation for Ordinary Losses, Settlement Class Members may claim Compensation of up to $2,500.00 for Extraordinary Losses. *Id.* ¶ 2.1.1(b). Extraordinary Losses are 1) actual, documented, and unreimbursed monetary losses; 2) that were more likely than not caused by the Data Security Incident; 3) that occurred after the Data Security Incident and prior to the Claims Deadline; 4) that are not already covered by one or more of the normal reimbursement

categories; and 5) that the Settlement Class Member claiming the Extraordinary Loss made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id*.

In lieu of a claim for Compensation for Ordinary Losses and Compensation for Extraordinary Losses all Settlement Class Members shall have the ability to claim an Alternative Cash Payment in the amount of Fifty Dollars ($50.00). *Id*. ¶ 2.1.2. Finally, each Settlement Class Member may claim one (1) year of three-bureau ("3B") credit monitoring in addition to the above. *Id*. ¶ 2.3.

The Parties negotiated Plaintiff's Service Award and an award of Attorneys' Fees and costs separately from the Benefits and Cash Payments described above. *Id*. ¶ 7.1; Decl. ¶¶ 13, 15.

**2.**    ***Information Security Improvements*** – Defendant represents that it has adopted and implemented additional data security measures following the Data Security Incident to further strengthen the security of its systems. *Id*. ¶ 2.4. Within thirty (30) days of the Preliminary Approval Order and upon request, Defendant will provide confirmatory information outlining the measures undertaken since the Data Security Incident and the estimated cost(s) of implementing such measures to the extent they can be quantified. *Id*.

**3.**    ***Releases*** – The Releasing Parties will release the Released Persons for claims relating to the Data Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, again Defendant and the other Released Persons. *Id*. ¶¶ 1.2, 6.1.

4. ***The Notice Program, Claim Process, Opt-Outs, and Objections***

***Administrative Costs*** – Defendant shall be responsible for all costs related to settlement administration, notice distribution and claims process, including costs of the Notice Program and Claims Process. *Id.* ¶¶ 2.6, 3.2, 8.1, 8.2.

***Settlement Administrator*** – The Parties have agreed to use Simpluris, Inc., as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶ 1.3.

***Notice Program*** – Defendant will deliver the Class Member Information to the Settlement Administrator within 30 days of Preliminary Approval. *Id*. ¶ 3.1(a). Within 45 days of Preliminary Approval, and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, Short Notice will be sent to the Settlement Class Members to the last postal address Defendant has on record after running the address through the USPS National Change of Address database to update any change of address on file with the USPS. *Id*. ¶ 3.2(d), Ex. A. The Settlement Administrator will perform reasonable address traces for undeliverable postcard Short Notices. *Id*. Short Notice shall include, inter alia: direction to the Settlement Website, the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing. *Id*. ¶ 1.28, Ex. A.

***Claims Process*** – The Claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim if Compensation for Ordinary Losses or Compensation for Extraordinary Losses is elected, submit Claims, and decide whether to opt-out or object. Decl. ¶ 35. Claim Forms are due to the Settlement Administrator by the Claims Deadline. Agreement ¶ 1.4. The Claim Form is in plain language for easy completion. Decl. ¶ 19. The Settlement Administrator will review the Claim Forms for

completeness and plausibility. Agreement ¶ 2.5.1. Implausible claims will be submitted to the Settling Parties for resolution. *Id.*

**Opt-outs and Objections** – The opt-out and objection deadlines are 60 days after the date on which the notice program commences, *id.* ¶ 5.1, to provide sufficient time to access and review the Settlement documents, including Plaintiff's Application for Attorneys' Fees, Costs, and Service Awards. Anyone who opts out may not object.

**5.    Service Awards, Attorneys' Fees and Costs**

**Service Awards** – The Agreement calls for a reasonable Service Award for the Class Representative of up to $2,500.00, *id.* ¶¶ 7.3, meant to compensate him for his efforts on the Settlement Class's behalf, including serving as named Plaintiff, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Decl. ¶ 38.

**Attorneys' Fees and Costs** – After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs separate from the total of Valid Claims. Class Counsel intends to seek an attorneys' fees and costs award not to exceed $200,000.00. Agreement ¶ 7.2. The Notices advise the Settlement Class of these intended requests and further information on how to object. *Id.*, Exs. A, B; Decl. ¶ 31. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Award 14 days prior to the Objection Date. *Id.* ¶ 7.5.

**IV.    LEGAL AUTHORITY**

Before the Settlement can be finally approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be expensive, so courts will generally first conduct a preliminary fairness review. *See Newberg on*

*Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arm's-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>> (A) the class representatives and class counsel have adequately represented the class;
>> (B) the proposal was negotiated at arm's length;
>> (C) the relief provided for the class is adequate, taking into account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit identified six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the

existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citation omitted); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case- law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). *See also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom.; In re Deepwater Horizon-Appeals of the Econ. & Prop. Damage Class Action Settlement*, 739 F.3d 790 (5th Cir. 2014) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D.

Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair-especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214, fn 69 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

Here, the foregoing Rule 23 and *Reed* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

## V.     LEGAL DISCUSSION

### A.     The Court Should Certify the Proposed Class for Settlement Purposes.

Before assessing the parties' Settlement Agreement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met.

When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

**Numerosity.** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992)); *see In re Talbert,* 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the numerosity requirement is easily met. Defendant represents that the Settlement Class consists of approximately 22,220 members. Decl. ¶ 2. Judicial economy would be well-served by certification.

*Commonality.* Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common answers apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d at 811 (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a single common question will do." *Id.* (citing *Dukes*, 564 U.S. at 359) (emphasis added) (alterations in original).

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Thus, common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class Members' Personal Information was compromised in the Security Incident; whether Defendant owed a duty to Plaintiff and Settlement Class Members; whether Defendant breached its duties; whether Defendant unreasonably delayed in notifying Plaintiff and Settlement Class Members of the material facts of the Security Incident; and whether Defendant committed the common law and statutory violations alleged in the Complaint. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1054 ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs'

financial information."); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *7 (W.D. Ky. Apr. 3, 2024) ( ommonality requirement met at the preliminary approval stage where the class members' injuries all arose from the defendant's "failure to maintain adequate data security and to secure its employees' PII" so that "the common issue at trial would be the sufficiency of [the defendant's] data security practices and its failure to secure its employees' PII"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16- MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

*Typicality.* Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). Here, Plaintiff's claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiff had Personal Information that was stored on Defendant's systems that was compromised in the Data Security Incident, and so Plaintiff suffered the same injury, was harmed by the same inadequate data security, and seeks to assert the same underlying claims as the rest of the Settlement Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

*Adequacy of Representation.* The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest

4934-6460-4510.2

between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d at 813 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

Plaintiff adequately represents the Settlement Class, as he has no conflicts of interest with other Settlement Class Members, is subject to no unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Decl. ¶¶ 5, 6, 27, 34. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See id* ¶¶ 5, 7, 21–25.; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

***Predominance and Superiority.*** Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to class-wide proof.

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant owed a duty to Plaintiff and Settlement Class Members, whether Defendant breached its duty, and whether Defendant unreasonably delayed in notifying Plaintiff and Settlement Class Members of the material facts of the Data Security Incident. These issues are subject to "class-wide proof" and "outweigh those issues that are subject to individualized proof." "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citations and quotations omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases). The Settlement Class meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

*See e.g.*, *Bowen*, 2024 WL 1446468, at *7; *See also In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same).

With respect to superiority, Rule 23(b)(3) identifies the following factors, each of which weighs in favor of finding superiority:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. *See Bowen*, 2024 WL 1446468, at *7 (citing *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("The 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery.")). It is also desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With more 22,220 class members, a class action would be superior to individual adjudication. *See Mullen*

*v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (comparing a class that would consist of hundreds, instead of millions, of members).

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

**B.      The Settlement Terms are Fair, Adequate, and Reasonable.**

The factors identified by Rule 23(e)(2) and the *Reed* case, *supra*, all weigh in favor of granting Preliminary Approval to allow Notice to issue to the Settlement Class.

> **1.  *Class Representative and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).***

Here, the class representative and class counsel have adequately represented the class. The Settlement Class members are all potentially affected by the same Data Security Incident as the Class Representative, and thus the Class Representative has common interests with the Settlement Class. Moreover, the Class Representative has ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Decl. ¶ 38.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Decl. ¶¶ 4–5. As such, Federal Rule of Civil Procedure 23(e)(2)(A) supports Preliminary Approval.

### 2. *The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).*

Here, the Agreement is clearly the product of good-faith arm's-length negotiations and there is no evidence of fraud or collusion. After an exchange of information related to liability and damages and rigorous negotiations that accounted for the strengths and weaknesses of the Parties' respective positions, the Parties negotiated a fair and reasonable settlement similar to or exceeding the value of other similar data breach class action settlements. Decl. ¶¶ 5, 30-32. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *ld.* ¶¶ 4–6.

There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶ 7, 26, 27; Agreement ¶ 10.5. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). "The Court may...presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Accordingly, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied and weighs in favor of approval.

### 3. *The Agreement provides substantial relief to the Settlement Class, considering the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).*

The third Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval. The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Security Incident. Specifically, all Settlement Class

Members may receive one (1) year of 3B credit monitoring. In addition, Settlement Class Members may receive recovery for certain documented Ordinary Losses and Extraordinary Losses, or alternatively may claim an Alternative Cash Payment. These benefits are consistent with, and in fact exceed, other approved settlements.  Decl. ¶ 12.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Although Plaintiff is confident in the merits of his claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiff anticipates substantial additional costs if litigation continues, including experts. Plaintiff would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *ln re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Data breach class actions are complex and remain unpredictable.  *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-

developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception.

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiff strongly believes in the merits, he also understands that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiff would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles-even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiff disputes Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without risking not receiving any relief at all if the case continues.

### 4. *The Stage of Proceedings and amount of Discovery Support Settlement.*

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the

desirability of settling the case on the terms proposed or continuing to litigate it." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The information necessary to evaluate the Settlement has been obtained through public sources as well as through informal discovery. Decl. ¶ 4, 27. There is no dispute that a Data Security Incident occurred, that certain types of unencrypted Personal Information were accessed and exfiltrated, and that this occurred for approximately 22,220 Class Members. These data points alone allow for assessing the Settlement, particularly where the legal positions have been litigated in many other cases, allowing for reasoned judgment.

### 5. *The Settlement Terms Represent a Favorable Compromise, Balancing the Likelihood of Success with Attendant Risks.*

While Class Counsel believe Plaintiff has a strong case on the merits, Defendant has a similarly strong belief to the contrary. There are a number of difficult factual issues involved in litigation of potential data breach issues, as well as complicated legal issues relating to causation and damages. *In re Citrix*, 2021 WL 2410651, at *3. A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming the district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

The settlement afforded here, as compared to the uncertainty of damages even following a successful finding of liability, weighs in favor of preliminary approval. Decl. ¶¶ 27, 28. As discussed in the section above relating to litigation risks, the time and expense involved for all parties in resolving those issues suggests a reasonable early settlement is the wisest course for everyone concerned.

### 6.   *The Recovery is Within an Appropriate Range.*

Class Counsel is experienced in data breach cases and class actions.  Decl. ¶ 21–29. This allows for a strong basis of information on which to judge a proposed settlement. It is Class Counsel's opinion that the proposed recovery is well within an appropriate range in terms of the amount recovered per Class Member. *Id.* ¶ 30.

### 7.   *The Settlement is Supported By Experienced Class Counsel and the Proposed Class Representative.*

As previously discussed, Class Counsel has extensive experience with class actions of this nature and strongly supports the proposal. *See* Decl. ¶ 5 –7, 21–29, 36. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. 2d at 649 (citing *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). By his review and consent to the terms of the Settlement Agreement the proposed Class Representative is of the same opinion.

### 8.   *The Settlement Treats Settlement Class Members Equitably Relative to Each Other.*

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class

Members with direct mail notice of the Settlement and informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *See* Section III(B), *supra*. Every Settlement Class Member who submits a valid claim and who attests that he or she was impacted by the Data Security Incident is eligible to receive a reimbursement for Ordinary Losses of up to $500.00, Extraordinary Losses of up to $2,500.00, or an Alternative Cash Payment of $50.00, as well as credit monitoring services for up to a year. Settlement Agreement ¶¶ 2.1.1–2.1.3. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### 9. *Summary.*

Each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the Settlement is an excellent result. It could not have been achieved without full commitment from the proposed Class Representative and Class Counsel. The Settlement is both fair and adequate and meets each of the Rule 23(e)(2) and *Reed* factors such that notice of the Settlement should be sent to the Settlement Class. *See ODonnell*, 2019 WL 4224040, at *13 (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable and adequate under Rule 23(e) and the governing case all where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement.").

### C.    The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. A–C. Defendant will provide the Claims Administrator with a list of Settlement Class Members within 30 days of Preliminary Approval. *See* Agreement ¶ 3.2(a). Within thirty (30) days of entry of the Preliminary Approval Order, the Claims Administrator shall run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS. *Id*. Within 45 days of entry of the Preliminary Approval Order and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, the Claims Administrator will mail Postcard Notice to the Settlement Class Members to provide direct and individual notice to each Settlement Class Member. *Id*. If Notice is returned undeliverable at least fourteen (14) days prior to the Opt-Out Date, because the address of the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. *Id*.

The Settlement Administrator will also establish and maintain a Settlement Website and will receive and review claim forms, requests for exclusion and objections. *Id*. ¶¶ 1.26, 3.1(f)–(g), 3.2(c). The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id*. ¶ 3.2(f). The Long Form Notice, Short Notice and Claim Form will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶¶ 3.2(c), Exs. A–C.

In compliance with Rule 23(c)(2)(B), the Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Award for the Class Representative and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; explaining the binding effect of a class judgment on Class Member; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. A–C.

The proposed Postcard Notice is the gold standard and is consistent with notice programs approved in various Circuits. *See, e.g., Burnett v. CallCore Media, Inc.*, No. 4:21- cv-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard and email notice).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id.* (citations and quotation marks omitted). As described above, the Notice Program has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected. Accordingly, the Notice Program should be approved. Decl. ¶¶ 34–35.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiff proposes the following schedule:

| Event | Deadline |
|---|---|
| **Defendant to deliver the Class Member Information to the Settlement Administrator** | 30 days after Preliminary Approval Order |
| **Notice Program Begins (Postcard Notice Sent)** | 45 days after Preliminary Approval Order (subject to receipt of necessary information to pay Settlement Administrator and provision of Class Member Information and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order) |
| **Notice Program Complete** | 90 days after Notice Date |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 14 days before Objection Deadline |
| **Opt-Out Deadline** | 60 days after Notice Date |
| **Objection Deadline** | 60 days after Notice Date |
| **Deadline to Submit Claim Forms** | 90 days after Notice Date |
| **Final Approval Hearing** | **_____, 2025, at _____ am/pm**. (Preferably the week of _____, *2025* or after) |

## VII.    CONCLUSION

Plaintiff and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiff as Class Representative; (7) appoint Jarrett L. Ellzey and Leigh S. Montgomery as Class

Counsel; (8) appoint Simpluris, Inc., as the Settlement Administrator; (9) stay the Action pending

Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any

litigation or asserting any claims against Defendant and the other Released Persons arising out of,

relating to, or in connection with the Released Claims prior to the Court's decision to grant Final

Approval of the Settlement; and (11) schedule a Final Approval Hearing.


Dated: August 12, 2025                    Respectfully submitted,


                                          */s/ Leigh S. Montgomery*
                                          Jarrett L. Ellzey (24040864)
                                          Leigh S. Montgomery (24052214)
                                          **EKSM, LLP**
                                          4200 Montrose Blvd., Ste. 200
                                          Houston, TX 77006
                                          Tel: (888) 350-3931
                                          Fax: (888) 276-3455
                                          Email: jellzey@eksm.com
                                          Email: lmontogomery@eksm.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 13, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Leigh S. Montgomery*
Leigh S. Montgomery

4934-6460-4510.2